**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

STEPHEN F.,

Plaintiff,

v.

8:25-CV-874
(LEK/DJS)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

**APPEARANCES:**

**OF COUNSEL:**

JUSTIN GOLDSTEIN LAW, PLLC
Attorney for Plaintiff
38 Pond Valley Circle
Penfield, New York 14526

JUSTIN GOLDSTEIN, ESQ.

SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

KRISTINA COHN, ESQ.

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT AND RECOMMENDATION[1]

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security that Plaintiff was not disabled. Dkt. No. 1. Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 7 & 9. For the reasons set

[1] This matter was referred to the undersigned for a Report-Recommendation pursuant to L.R. 72.3(e).

forth below, Plaintiff's Motion for Judgment on the Pleading is denied and Defendant's Motion is granted.

## I. BACKGROUND

### A. Factual Background and Procedural History

Plaintiff was born in 1996. Dkt No. 6, Admin. Tr. ("Tr."), p. 194. Plaintiff alleges disability due to autism, mental health, anxiety, asthma, allergies, and attention-deficit/hyperactivity disorder ("ADHD"). Tr. at p. 231. On March 2, 2023, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act. Tr. at pp. 194-200. Plaintiff's application was denied, Tr. at pp. 63-66, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at p. 77. Plaintiff subsequently appeared and testified at a hearing before ALJ Kenneth Theurer on June 26, 2024, along with a vocational expert. Tr. at pp. 28-50. On July 2, 2024, ALJ Theurer issued a written decision finding Plaintiff was not under a disability from September 1, 2013, the alleged onset date, through September 30, 2019, the date last insured. Tr. at p. 16. On May 19, 2025, the Appeals Council denied Plaintiff's request for review. Tr. at pp. 1-6.

### B. The ALJ's Decision

In his decision the ALJ made the following findings of fact and conclusions of law. First, the ALJ found Plaintiff last met the insured status requirements of the Social Security Act on September 30, 2019. Tr. at p. 12. Second, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of September 1, 2013, through his date last insured of September 30, 2019. *Id*. Next, the

ALJ found Plaintiff had the following medically determinable impairments: asthma, obesity, and ADHD. *Id*. Fourth, the ALJ found that through the date last insured Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for twelve consecutive months and thus did not have a severe impairment or combination of impairments. Tr. at p. 13. The ALJ, therefore, concluded Plaintiff was not under a disability at any time from September 1, 2013, through September 30, 2019. Tr. at p. 16.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). Rather, the Commissioner's determination will be reversed only if the ALJ did not apply the correct legal standards, or if the determination was not supported by substantial evidence. *Moran v. Astrue*, 569 F.3d 108, 113 (2d Cir. 2009). "Substantial evidence" is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted).

On an appeal, to determine whether substantial evidence supports the ALJ's findings, the Court considers "the whole record, examining the evidence from both sides" because analysis of the evidence's substantiality must include information "which detracts from its weight." *Stacy D. v. Comm'r of Soc. Sec.*, 358 F. Supp. 3d 197, 201 (N.D.N.Y. 2019) (quoting *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). If the

Commissioner's finding is supported by substantial evidence, it must be sustained "even where substantial evidence may [also] support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Thomas C. W. v. Kijakazi*, 666 F. Supp. 3d 202, 215 (N.D.N.Y. 2023) (quotation omitted) (alterations in original).

**B. Standard to Determine Disability**

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this evaluation process. *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003).

The five-step process "first asks whether the claimant is currently 'doing substantial gainful activity.'" *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 67-68 (2d Cir. 2025) (quoting 20 C.F.R. § 416.920(a)(4)(i)). Step two considers "whether the claimant has a severe impairment or combination of impairments." *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d 90, 94 (2d Cir. 2019)). Step three then examines whether the impairment meets or equals the severity of specific impairments in the Listing of Impairments. *Id.* Step four analyzes, based on the claimant's RFC assessment, "whether the claimant can perform any of their past relevant work." *Id.* (citing 20 C.F.R. § 416.920(a)(4)(iv)). Lastly, step five "evaluates 'whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's [RFC], age, education, and work experience.'" *Id.* (quoting *Estrella v. Berryhill*, 925 F.3d at 94) (alteration in original).

"If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Schillo v. Kijakazi*, 31 F.4th at 70 (quoting *Barnhart v. Thomas*, 540 U.S. at 24) (alteration in original).

## III. ANALYSIS

### A. Step Two Determination

In this case, the sequential analysis ended at Step Two. *See generally* Tr. at pp. 12-16. Upon review of the record and the arguments of the parties, the Court recommends finding that the Step Two determination here was supported by substantial evidence and that remand for further proceeding is not necessary.

At Step Two, the ALJ "assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities." *Armstrong v. Berryhill*, 2018 WL 1357378, at *2 (N.D.N.Y. Mar. 14, 2018) (citing 20 C.F.R. § § 404.1520(c)). An impairment will be considered severe if it causes "more than minimal limitations in [a claimant's] ability to perform work-related functions." *Donahue v. Colvin*, 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018) (alteration in original); *Lugo Rodriguez v. Berryhill*, 2018 WL 1135330, at *4 (D. Conn. Mar. 2, 2018) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 154 n.12 (1987)) ("In other words, any claim in which the medical evidence establishes more than a 'slight abnormality' with 'no more than a minimal effect on an individual's ability to work' should be determined 'severe.'"). Further, a severe impairment must persist for at least twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (disability involves impairment "which can

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months”).

It is Plaintiff’s burden, not the Commissioner’s, to demonstrate the functional limitations he claims. *See* 42 U.S.C. § 423(d)(5)(A) (“An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.”); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm’r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (holding that it was plaintiff’s burden to establish that he is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof).

The ALJ found Plaintiff suffered from the medically determinable impairments: “asthma, obesity, and ADHD.” Tr. at p. 12. The ALJ noted in regard to Plaintiff’s autism that, “[i]n 2022, the claimant approached his treatment provider with concerns regarding autism. However, this is well after the period in question, and there is little or no evidence to establish this as a medically determinable impairment.” Tr. at p. 13 (citing Tr. at p. 314).

The ALJ’s finding of no disability turned therefore on concluding that Plaintiff had no severe impairment. Tr. at p. 16. “‘Severe’ impairments are those that ‘significantly limit’ physical or mental abilities to do basic work activities.” *Heather C. v. Berryhill*, 2019 WL 1432593, at *4 (N.D.N.Y. Mar. 29, 2019) (quotations and citations omitted). At Step Two, the ALJ is tasked with determining whether the claimant has an impairment,

or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on that claimant's ability to perform basic work activities, including: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; . . . seeing, hearing, and speaking; . . . [u]nderstanding, carrying out, and remembering simple instructions; . . . [u]se of judgment; . . . [and] [r]esponding appropriately to supervision, co-workers and usual work situations.'" 20 C.F.R. § 404.1522(b).

Plaintiff argues that:

> the ALJ wrongly focused on when Plaintiff received his diagnosis and the absence of contemporaneous records. The ALJ did not apply the appropriate standard for application involving remote relevant time periods. Given the evidence in the record and the nature of Autism, Plaintiff clearly already had Autism during the remote relevant time period.

Dkt. No. 7, Pl.'s Br. at p. 10. The record, however, shows that there was never a firm diagnosis of autism. Throughout the 547-page transcript, autism is mentioned five times. Tr. at pp. 314, 356, 361-62. On June 30, 2022, Plaintiff attended an appointment with Gregory Healey, M.D. ("Dr. Healey"), which resulted in a note that Plaintiff "is concerned that he may be autistic so he would like a referral to a specialist." Tr. at p. 314. On November 4, 2022, Plaintiff was referred to St. Lawrence County Community Services, and the assessment concluded a diagnostic impression of an autistic disorder. Tr. at pp. 362, 369. A "'[d]iagnostic impression' is a term used in medicine that refers to the initial understanding or guess of what might be causing a person's health problem." Lukas A. Huber, *Medical Dictionary*, BALUMED (July 9, 2026, 12:11 PM), https://balumed.com/en/medical-dictionary/diagnostic-impression. Other than this

diagnostic impression, autism or an autistic disorder is not listed on any treatment notes under medical history or diagnoses.

In Plaintiff's disability report he reported he was currently working, and his conditions have not caused him to make changes in his work activity. Tr. at p. 231. He is interested in full-time employment. Tr. at pp. 358, 362. Plaintiff had no problems with personal care. Tr. at pp. 238, 246. Plaintiff mows, shovels, and does yard work. Tr. at p. 239. Plaintiff prepared his own meals, completed housework, and handled money. Tr. at p. 535. After the death of his father, Plaintiff helped his mother with paperwork and maintenance around the house. Tr. at pp. 461, 467. Plaintiff contends his "education records indicated that was impaired due to 'slow processing.'" Pl.'s Br. at p. 14. However, Plaintiff took advanced placement classes from sophomore to senior year. Tr. at p. 298. As further support that Plaintiff's autism was severe, he "described himself as *always* being 'socially awkward'" and had difficulty communicating. Pl.'s Br. at p. 14 (emphasis in original). Throughout his treatment with Dr. Healey, he was consistently alert and oriented, had appropriate affect and demeanor, and good insight and judgment. Tr. at pp. 500, 503, 508, 512, 515, 531. At his December 5, 2023, session with Katelyn Jessmer, LMHC, Plaintiff's goal was to spend more time with other people. Tr. at p. 470. Plaintiff progressed towards his goal, "ha[d] been working more on his communication with his family," and rated his parents at a level six of comfort for communication and rated his friends as a seven. *Id*. "He explained he would like to build up communication skills for dating others." *Id*. He plays online with his friends and enjoys talking with them. Tr. at p. 478. Plaintiff gets along well with authority figures. Tr. at p. 243. Plaintiff

stated he "believes that attending mental health services will support him in improving his quality of life to communicate without awkwardness." Tr. at p. 362. Thus, substantial evidence supports the ALJ's determination that Plaintiff does not have a medically determinable impairment of autism nor is it severe.

**B. The ALJ Properly Evaluated Dr. Healey's Medical Opinion**

Plaintiff further argues the ALJ failed to properly evaluate Dr. Healey's medical opinion. Pl.'s Br. at pp. 15-16.

On May 8, 2024, Dr. Healey completed a "[m]edical statement regarding autism and related disorders for Social Security disability." Tr. at p. 492. Dr. Healey noted he first started seeing Plaintiff on March 18, 2005, and his most recent visit was May 9, 2024. Tr. at p. 492. Dr. Healey checked that Plaintiff had the following disease symptoms: "[q]ualitative deficits in reciprocal social interaction"; "[q]ualitative deficits in verbal and nonverbal communication and social interactions"; "[s]ignificantly restricted, repetitive patterns of behavior, interests or activities"; and "marked difficulties in maintaining social functioning," as well as "concentration, persistence, or pace." *Id.* Dr. Healey opined Plaintiff was not significantly limited in the ability to: "remember locations and work-like procedures"; "understand and remember short and simple instructions"; and "carry out very short and simple instructions." Tr. at p. 493. He opined Plaintiff was moderately limited in his ability to: "sustain an ordinary routine without special supervision"; "make simple work-related decisions"; "ask simple questions or request assistance"; "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness"; "be aware of normal hazards and take appropriate

precautions"; "travel in unfamiliar places or use public transportation"; and "set realistic goals or make plans independently of others." Tr. at pp. 493-94. Dr. Healey further opined Plaintiff was markedly limited in his ability to: "carry out detailed instructions"; "maintain attention and concentration for extended periods"; "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; "work in coordination with and proximity with others without being distracted by them"; "accept instructions and respond appropriately to criticism from supervisors"; "get along with coworkers or peers without distracting them or exhibiting behavioral extremes"; and "respond appropriately to changes in the work setting." Tr. at p. 493. He also opined Plaintiff had extreme limitations in his ability to: "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; and "interact appropriately with the general public." *Id.*

Dr. Healey noted Plaintiff would be able to protect himself from others and would be able to recognize if he "were being treated unfairly, unkindly, or abusively at work, and thereafter be able to take appropriate remedial measures[.]" Tr. at p. 494. He further noted Plaintiff would "have periods of serious decompensation if he . . . was to attempt to work a full time job." *Id.* When asked how Plaintiff "would likely respond to a significant change in a working environment," Dr. Healey answered, "withdrawal primarily – Mr. Folk is not aggressive." *Id.* Similarly, when asked how Plaintiff "would likely respond to a small change in a work environment," he answered "confusion, significant reduction in work speed." *Id.* Dr. Healey further opined Plaintiff would be

"absent from work . . . [m]ore than four days per month" and would be "off-task" more than thirty percent of the time during a normal workday. *Id*. Dr. Healey concluded that overall Plaintiff was moderately limited in his ability to understand, remember, or apply information, and interact with others, and markedly limited in his ability to concentrate, persist, or maintain pace, and adapt or manage himself. Tr. at pp. 494-95.

ALJ Theurer found Dr. Healey's opinion not persuasive. Tr. at p. 16. First, ALJ Theurer noted "this opinion was rendered many years after the date last insured." *Id*. "It is true that '[a] medical opinion rendered well after a plaintiff's date last insured may be of little, or no, probative value regarding plaintiff's condition during the relevant time period.'" *April S. v. Comm'r of Soc. Sec.*, 2024 WL 4181880, at *1 (N.D.N.Y. Sept. 13, 2024) (quoting *Major v. Saul*, 2020 WL 5793468, at *10 (D. Conn. Sept. 29, 2020)). The record in this case contains approximately eleven years of Plaintiff's medical records, including those predating his alleged onset date. *See* Tr. at pp. 312-542. Next, ALJ Theurer found the opinion "contrary to the normal clinical findings of record," Plaintiff's "ability to complete college and work as a lifeguard," and "his own records from the period in question that note 'no symptoms' and 'doing well on current dose of medication.'" *Id*. (citing Tr. at p. 375).

Dr. Healey's opinion was unsupported by his own records and inconsistent with other evidence. Plaintiff said he had no ADHD symptoms and was "doing well" on the current doses of his ADHD medication. Tr. at p. 375. At multiple appointments Plaintiff had appropriate affect and demeanor as well as full orientation, intact memory, and good insight and judgment. Tr. at pp. 377, 380, 384, 390. At the time of the hearing, Plaintiff

testified he had an associate's degree in general studies, a bachelor's degree in information technology, and was currently in school for a bachelor's degree in cyber security. Tr. at pp. 32, 35. While he testified regarding troubles in his lifeguard job, he told Dr. Healey that work as a lifeguard was "going very well." Tr. at pp. 42-43, 382. Lastly, other treatment records showed that Plaintiff has full orientation, intact memory, normal thoughts, appropriate affect, and good insight and judgment. Tr. at pp. 315, 317, 320, 323, 327, 500, 515.

The ALJ properly assessed Plaintiff's impairments at Step Two and, contrary to Plaintiff's allegations, the ALJ did not improperly dismiss the medical opinion of Dr. Healey.

**C. Duty to Develop the Record**

Plaintiff contends that the ALJ erred by not further developing the record by obtaining a "retrospective medical opinion" regarding Plaintiff's "complex medical impairments" prior to May 2024. Pl.'s Br. at p. 18. Plaintiff maintains that the record is devoid of any medical opinion assessing his functioning between September 1, 2013, to September 30, 2019. Thus, Plaintiff argues, given his "remote relevant time period," the ALJ erred by failing to fully develop the factual record by obtaining a medical opinion assessing his capabilities during that time period. *Id.* at pp. 18-20.

An ALJ has an affirmative obligation to develop a claimant's complete and accurate medical record. "[T]he Commissioner of Social Security . . . shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C. §

423(d)(5)(B); *see also Perez v. Chater*, 77 F.3d, 41, 47 (2d Cir. 1996) (citation omitted) (noting that a "hearing on disability benefits is a non-adversarial proceeding," and as such, "the ALJ generally has an affirmative obligation to develop the administrative record"). An ALJ's failure to comply with this mandate is legal error. *Rose v. Comm'r of Soc. Sec.*, 202 F. Supp. 3d 231, 239 (E.D.N.Y. 2016). However, the ALJ's duty to develop the record is not unlimited and is discharged "where the ALJ already possesses [the claimant's] complete medical history" and "there are no obvious gaps" or inconsistencies "in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quotation and internal quotation marks omitted).

The record in this case contains eleven years of Plaintiff's medical records, including those during the relevant time period. *See* Tr. at pp. 312-543. Moreover, the record contains the evaluations of the state agency consultant, who reviewed the entire record and determined there was "insufficient evidence" both "to adjudicate the claim" and "assess for severity of the impairment." Tr. at pp. 52, 53, 57. Further, the only impairments the state agency consultants found were asthma and ADHD. Tr. at pp. 53, 58. When Dr. Healey completed a medical opinion on May 8, 2024, he had been treating Plaintiff since 2005 and submitted records dating back to 2013. Tr. at pp. 492-95. "A medical doctor is permitted to offer his medical opinion based on his evaluation and the record evidence." *Dolson v. Comm'r of Soc. Sec.*, 2020 WL 2848099, at *3 (S.D.N.Y. June 1, 2020). Although the opinion does not explicitly assess Plaintiff's functioning from 2013 to 2019, the Court infers Dr. Healey based his opinion on his experience with Plaintiff since 2005. Accordingly, the Court finds the record in this case was sufficiently

developed to permit the ALJ to make a determination and that determination is supported by substantial evidence.

## IV. CONCLUSION

**WHEREFORE,** for the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 7) be **DENIED**; and it is further

**RECOMMENDED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 9) be **GRANTED**; and it is further

**RECOMMENDED**, that the Commissioner's decision denying Plaintiff benefits be **AFFIRMED**; and it is

**ORDERED**, that the Clerk of the Court shall serve copies of this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs*., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: August 4, 2026
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

D J S